SIXTH DIVISION 
 May 30, 1997






Nos. 1-96-2234 and 1-96-3273 (Consolidated)



CHICAGO TITLE AND TRUST COMPANY, ) Appeal from the 
as Trustee under the Will of ) Circuit Court of 
Robert Sonnenschein, Deceased, ) Cook County 
 )
 Plaintiff-Appellee, )
 )
 v. ) No. 95 CH 8444 
 )
HUGO R. STEINITZ and PAUL L. STEINITZ, )
 )
 Defendants-Appellants )
 )
(Ralph R. Sonnenschein, Carl L. )
Sonnenschein, David C. Sonnenschein, )
Lisa Branch, Ann Feiner, Robert )
Sonnenschein and Barbara Sonnenschein, )
 )
 Defendants-Appellees) )
 )
________________________________________ ) 
 )
HUGO R. STEINITZ and PAUL L. STEINITZ, )
 )
 Counterplaintiffs-Defendants- )
 Appellants, )
 )
 v. )
 )
CHICAGO TITLE AND TRUST COMPANY, ) 
as Trustee under the Will of )
Robert Sonnenschein, deceased, )
 )
 Counterdefendants-Plaintiff- )
 Appellees )
 )
RALPH R. SONNENSCHEIN, CARL L. )
SONNENSCHEIN, DAVID C. SONNENSCHEIN, )
LISA BRANCH, ANN FEINER, ROBERT )
SONNENSCHEIN and BARBARA SONNENSCHEIN, ) 
 ) Honorable 
 Counterdefendants- Defendants- ) Michael Getty,
 Appellees. ) Judge Presiding. 
 
 PRESIDING JUSTICE GREIMAN delivered the opinion of the
court:
 Robert Sonnenschein (Robert) executed a will (the will)
dated December 3, 1937, and died on November 8, 1939. Robert was
survived by his wife Flora and three children: Jeanne Anne
Sonnenschein (Jeanne), Carl Sonnenschein (Carl), and Ralph
Sonnenschein (Ralph). The will bequeathed certain personal
property to Flora and the remainder of his estate in trust 
designating Flora and Chicago Title and Trust Company as
trustees. The net income from the trust was to be paid to Flora 
during her lifetime. Upon the Flora's death, the will provided
as follows in the sixth paragraph: 
 "Upon the date of the death of my wife, FLORA K.
 SONNENSCHEIN, *** I direct my Trustees to divide the
 trust estate, both as to principal and accrued but
 undistributed income, into three separate trust funds,
 one of said three separate trust funds to consist of
 40% of said trust estate and to be held for the use and
 benefit of my daughter, JEANNE ANNA SONNENSCHEIN, and
 the other two of said three separate trust funds to
 consist of 30% each of said trust estate and to be held
 one each for the use and benefit of my two sons, CARL
 LEO SONNENSCHEIN and RALPH ROBERT SONNENSCHEIN,
 respectively. 
 My Trustees shall pay over and distribute to each
 of my said three children, respectively, quarterly or
 oftener in the discretion of my said Trustees, all of
 the net income derived from the respective separate
 trust funds held for the use and benefit of each of my
 said three children, respectively, during each and
 every year ensuing subsequent thereto and prior to the
 dates of the deaths of my said three children,
 respectively." 
 Flora Sonnenschein died on January 15, 1976, survived by all
three children (Jeanne, Ralph and Carl). Pursuant to the will,
Chicago Title and Trust then acted as sole trustee and paid the
net income from the trust to the three children in their
respective portions as designated in the will. 
 Jeanne married, took the name Steinitz, and adopted two
sons, Hugo and Paul (the Steinitz defendants). Carl had two
children (Robert Sonnenschein and Barbara Sonnenschein). Ralph
had three children (David C. Sonnenschein, Lisa Branch and Ann
Feiner). 
 Upon the death of any of the three children, the sixth
paragraph of the Will further provided as follows: 
 "Upon the dates of the deaths of my said three children,
respectively *** my Trustees shall pay over and distribute the
separate trust fund of such of my said three children so dying
(or so having died), as to both principal and accrued but
undistributed income, unto the then surviving lawful issue of
such of my said three children, respectively, per stirpes and not
per capita. In the event that any of my said three children so
dying *** shall leave no lawful issue surviving at that time, the
separate trust fund of such of my said three children so dying
*** shall be divided between the separate trust funds of the
other two of my said three children in the same proportions as is
hereinabove provided with respect to the creation of the original
separate trust funds, and shall be held, used, paid over and
distributed in the same manner and at the same times and to the
same persons as is herein provided with respect to said other two
separate trust funds." 
 Jeanne died on August 16, 1978. At that time, the trustee
correctly determined that the two adopted sons of Jeanne, Hugo
and Paul, were not "lawful issue" of Jeanne under then-existing
Illinois law and thus not beneficiaries of Jeanne's trust. The
trustee then divided Jeanne's 40% share of the trust fund into
two equal parts and allocated one part to Carl and one part to
Ralph. No principal distributions have ever been made to
Robert's children. On June 20, 1995, the aggregate value of the
assets held under the will was approximately $541,000. 
 In 1989, the General Assembly amended the Probate Act of
1975 (755 ILCS 5/1-1 et seq. (West 1992)) to treat adopted
children the same as natural children in instruments executed
before September 1, 1955. The legislature added subsections 2-
4(f) and 2-4(g), which provide in pertinent part as follows: 
 "(f) After September 30, 1989, a child adopted at
 any time before or after that date is deemed a child
 born to the adopting parent for the purpose of
 determining the property rights of any person under any
 instrument executed before September 1, 1955, unless
 one or more of the following conditions applies: 
 (1) The intent to exclude such child is
 demonstrated by the terms of the instrument
 by clear and convincing evidence." 755 ILCS
 5/2-4(f) (West 1992). 
 "(g) No fiduciary or other person shall be liable
 to any other person for any action taken or benefit
 received prior to October 1, 1989, under any instrument
 executed before September 1, 1955, that was based on a
 good faith interpretation of Illinois law regarding the
 right of adopted children to take property under such
 an instrument." (Emphasis added.) 755 ILCS 5/2-4(g)
 (West 1994). 
 Prior to the 1989 amendments, the statutory presumption that
a testator intended for adopted children to be treated as natural
offspring applied only to the construction of written instruments
executed on or after September 1, 1955. Ill. Rev. Stat. 1987,
ch. 110 1/2, par. 2-4(e). 
 In 1994, after the amendments to the Probate Act, Hugo and
Paul indicated to the trustee that they should be beneficiaries
of their mother's share of the trust. On the other hand, Carl,
Ralph and their children opposed the claim of Hugo and Paul,
contending that they were not proper beneficiaries entitled to
receive Jeanne's share of the trust upon her death; that
subsequent changes in Illinois law have not entitled them to the
reestablishment of the terminated share; and that the trustee
should continue to administer such share as part of the separate
trust funds for the benefit of Carl and Ralph. 
 In light of the competing interests involved, the trustee
filed a complaint to construe the trust and for a declaratory
judgment to resolve the dispute between the Steinitz defendants
and Ralph Sonnenschein, Ralph's children (David C. Sonnenschein,
Lisa Branch and Ann Feiner), Carl L. Sonnenschein, and Carl's
children (Robert Sonnenschein and Barbara Sonnenschein)
(hereinafter collectively referred to as the Sonnenschein
defendants). 
 The Steinitz defendants filed an amended countercomplaint,
asking that the court declare them to be entitled to Jeanne's
entire 40% share in the trust and all income therefrom from the
date of Jeanne's death, as her surviving lawful issue. The
Steinitz defendants filed a motion for judgment on the pleadings
pursuant to section 2-615(e) of the Code of Civil Procedure (735
ILCS 5/2-615(e) (West 1994)). The Sonnenschein defendants filed
a response. On March 27, 1996, a hearing was held on the motion
for judgment on the pleadings filed by the Steinitz defendants. 
 On April 10, 1996, the trial court issued a memorandum of
opinion, finding that (1) the parties agreed that the Steinitz
defendants were among those meant to be affected by the enactment
of section 2-4(f) of the Probate Act; (2) the will created three
separate trust funds, one for each of the three children (Jeanne,
Carl, and Ralph); (3) Jeanne's trust fund terminated after she
died and her share was distributed to the trusts held for the
benefit of Carl and Ralph; and (4) the Steinitz defendants cannot
take from Jeanne's trust fund, which previously terminated, and
cannot recover from Carl and Ralph the benefits they received at
the time of Jeanne's death pursuant to the will. 
 On April 11, 1996, the trial court issued a corrected
memorandum of opinion. The only change made from the April 10
memorandum of opinion was the addition of two sentences denying
the Steinitz defendants' motion for judgment on the pleadings and
granting the Sonnenschein defendants judgment on the pleadings. 
Thereafter, following a hearing on June 7, 1996, the trial court
denied the Steinitz defendants' motion for rehearing and
modification or vacation of judgment. 
 On June 19, 1996, the Steinitz defendants filed a timely
notice of appeal from the three orders (April 10, April 11, and
June 7). That appeal was given the number 1-96-2234. After
other procedural matters, on September 9, 1996, the Steinitz
defendants filed a notice of appeal from the same orders (April
10, April 11 and June 7). That appeal was given the number 1-96-
3273. On October 22, 1996, this court consolidated the two
appeals. 
 On appeal, the Steinitz defendants raise the following
issues: (1) whether the trial court erred in interpreting the
will; (2) whether section 2-4(g) of the Probate Act (755 ILCS
5/2-4 (West 1994)) prevents the Steinitz defendants from
recovering benefits; and (3) whether the trial court erred in
granting judgment on the pleadings to codefendants, as a matter
of law. In particular, the Steinitz defendants contest the trial
court's findings that the will established three separate trusts
and that the trust under which the Steinitz defendants seek to
take was terminated. We agree with the trial court's findings
and affirm the trial court's orders. 
 The Steinitz defendants assert that the trial court
incorrectly interpreted the will. The Steinitz defendants argue
that (1) the will created one trust, not three separate trusts;
and (2) Jeanne's share of the trust has not terminated because no
distribution of Jeanne's trust fund has been made and the trust
fund still exists. We disagree. 
 In construing a will, the court's primary concern is to 
find the testator's intent and, provided that the intention is
not against public policy, to give it effect. Harris Trust &
Savings Bank v. Beach, 118 Ill. 2d 1, 3 (1987); Estate of
Williamson v. Williamson, 275 Ill. App. 3d 999, 1007 (1995); In
re Estate of Beck, 272 Ill. App. 3d 31, 34-35 (1995). The
testator's intent is most clearly evidenced by the language of
the will. Williamson, 275 Ill. App. 3d at 1007. "[T]he court
must consider the plain and ordinary meaning of the words used
[citations], and the intent must be ascertained by considering
the entire document." In re Estate of Beck, 272 Ill. App. 3d at
35, quoting First National Bank v. Canton Council of Campfire
Girls, Inc., 85 Ill. 2d 507, 514 (1981). 
 The plain, unambiguous language of the will states that
three separate trust funds were to be created for the three
children, and the will refers to these separate trust funds on
numerous occasions, including nine such references in the sixth
paragraph alone. The sixth paragraph of the will provides that
upon the death of Flora, the trustees are "to divide the trust
estate *** into three separate trust funds" designated to the
three children (Jeanne, Carl and Ralph). Upon the death of any
of the three children, the trustees "shall pay over and
distribute the separate trust fund of such of my said three
children so dying *** to the then surviving lawful issue of such
of my said three children." If no lawful issue survive, then
"the separate trust fund *** shall be divided between the
separate trust funds of the other two of my said three children." 
 Additionally, the ninth paragraph of the will provides:
 "In making division of the trust estate into shares under
the provisions hereinabove contained, the Trustees may assign
undivided interests in any assets of the trust estate to the
several shares and may make joint investments of funds in said
shares, and so long as the same can advantageously be done, may
hold the several shares as a common fund and divide the net
income therefrom among the several shares proportionately."
 While this provision allows the trustee the right or
opportunity to invest the res of each trust jointly or hold
interests undivided among the separate trusts, it seems clear
that the testator's intention is that the trusts remain separate
and that the trustees are merely afforded a degree of convenience
"so long as the same can advantageously be done."
 The Steinitz defendants argue that the phrase "separate
trust funds" is not the same as "separate trusts." However, they
did begrudgingly concede at oral argument that the sixth
paragraph of the will also restricts the trustee from invading
the corpus of one beneficiary's trust for the benefit of another
beneficiary. Again, we are provided with evidence of the
testator's intention to create three separate trusts for the
objects of his bounty. 
 We reject the Steinitz defendants' argument that the phrase
"separate trust funds" is not the same as "separate trusts." In
First National Bank v. King, 263 Ill. App. 3d 813, 815 (1994),
aff'd, 165 Ill. 2d 533 (1995), this court examined a will that
"left the substantial bulk of the testator's estate in trust, to
be divided into three equal funds." This court considered "each
of the three funds *** as a separate and distinct fund." King,
263 Ill. App. 3d at 816.
 As in King, the plain and unambiguous language in the will
we are considering established that Robert intended and created
three separate trusts, one trust for each of his three children. 
The will repeatedly uses the phrase "three separate trust funds." 
(Emphasis added.) The plain language of the will, the intent of
the Will in its entirety, and the King case support the finding
of three, not one, trusts. 
 Second, the Steinitz defendants assert that Jeanne's trust
fund has not terminated and argue that no distribution of
Jeanne's trust fund has been made because the principal still
exists. The Steinitz defendants urge that the bookkeeping entry
made by the trustee upon Jeanne's death did not terminate
Jeanne's trust. We find this argument also unpersuasive. 
 The will provides that upon the death of one of the three
children (Jeanne, Carl or Ralph), the trustee "shall pay over and
distribute the separate trust fund of such [deceased child] ***
unto the then surviving lawful issue of [the deceased child]." 
(Emphasis added.) Absent any lawful issue, "the separate trust
fund of [the deceased child] *** shall be divided between the
separate trust funds of the other two [surviving children]." 
(Emphasis added.) 
 In its complaint, the trustee stated that, in 1979, after
Jeanne died, it "divided Jeanne's 40% separate trust fund upon
its termination into two equal parts and allocated one such part
to each separate trust fund already being held for each of Carl's
and Ralph's benefit under the Will." (Emphasis added.) The
division and allocation of Jeanne's trust was made by a
bookkeeping entry on the part of the trustee. 
 A trust can terminate under several circumstances, including
revocation or modification by the settlor, expiration of the
period for which the trust was created, or conveyance by the
trustee to or at the direction of the beneficiary or by other
terms of the instrument. Restatement (Second) of Trusts sections
330 through 43 (1959). When a trust terminates, a trustee must
perform the acts necessary to wind up the trust. "When the time
for the termination of the trust has arrived, the trustee has
such powers and duties as are appropriate for the winding up of
the trust." Restatement (Second) of Trusts sec. 344 (1959). See
also 4 A. Scott & W. Fratcher, Scott on Trusts sec. 344, at 542-
47 (4th ed. 1989) (powers and duties of trustee in termination of
trust); G. Bogert & G. Bogert, Trusts & Trustees sec. 1010, at
448-67 (2d rev. ed. 1983) (powers and duties of trustee on
termination of trust). 
 The Restatement (Second) of Trusts further explains as
follows: "By 'the time for the termination of the trust' is
meant the time at which it becomes the duty of the trustee to
wind up the trust. Ordinarily, this time is at the expiration of
the period for which the trust is created." Restatement (Second)
of Trusts sec. 344, Comment a, at 191 (1959). 
 The time for the termination of Jeanne's trust arrived at
the time Jeanne died. Absent lawful issue, the transfer of
Jeanne's trust to Carl and Ralph, albeit by a bookkeeping entry,
terminated Jeanne's trust. Any banking transaction in the modern
world is typically accomplished via computer entries. If
"bookkeeping entries" were not given validity, then it would be
axiomatic that computer entries would not be valid. Similarly
any electronic, telephonic, automatic teller machine, and
facsimile transactions would equally be of no effect. We find
that, in accordance with the terms of the will and then-existing
Illinois law, the trustee divided, and thereby terminated,
Jeanne's trust to Carl and Ralph. 
 Moreover, we find that the Steinitz defendants' reliance on
First National Bank v. King, 165 Ill. 2d 533 (1995), is
misplaced. The trust at issue in King had not terminated because
there were several beneficiaries enjoying the bounty of the trust
after the death of the primary beneficiary. King, 165 Ill. 2d at
536. Upon the death of their mother, the trust income was
distributed to the natural children and, thereafter, grandchild
pursuant to then-existing Illinois law. The adopted child's
subsequent claim under the 1989 amendments to the Probate Act,
therefore, was viable because the trust had continued for the
natural progenies' benefit. In contrast, in the instant case,
Jeanne died leaving no lawful, nonadopted issue and her trust
terminated when it was distributed to Carl and Ralph. 
 In light of our decision that the will created three
separate trusts and that Jeanne's trust terminated with the
distribution to Carl and Ralph, we need not address the Steinitz
defendants' assertion that section 2-4(g) of the Probate Act does
not prohibit surcharging Carl's and Ralph's shares. 
 Lastly, the Steinitz defendants assert that the trial court
erred in granting judgment on the pleadings to the Sonnenschein
defendants because the Sonnenschein defendants had not moved for
judgment and a relevant factual question existed from the
pleadings, i.e., whether the trustee's division of Jeanne's 40%
share of the trust fund constituted the desinence of Jeanne's
trust. 
 Our review of an appeal from a motion for judgment on the
pleadings is de novo. E.g., J&B Steel Contractors, Inc. v. C.
Iber & Sons, Inc. , 162 Ill. 2d 265, 269 (1994); Friedman v.
Krupp Corp., 282 Ill. App. 3d 436, 440 (1996). On review, we
must determine whether any genuine issue of material fact exists
and, if not, whether the prevailing party was entitled to
judgment as a matter of law. Millers Mutual Insurance Ass'n v.
Graham Oil Co., 282 Ill. App. 3d 129, 134 (1996); see also
Grzeszczak v. Illinois Farmers Insurance Co., 168 Ill. 2d 216,
223 (1995). "Judgment on the pleadings is proper only if
questions of law, and not of fact, exist after the pleadings have
been filed." Millers Mutual, 282 Ill. App. 3d at 134. If no
issue of material fact is presented by the pleadings, "the
question is which party is entitled to judgment." Pioneer Bank &
Trust Co. v. Austin Bank, 279 Ill. App. 3d 9, 13 (1996). 
 The dispute in the present case was initiated by the trustee
when it filed a complaint for trust construction and declaratory
judgment. Subsequent filings included countercomplaints by the
Steinitz defendants, a motion for judgment on the pleadings by
the Steinitz defendants, and respective responses by the
Sonnenschein defendants. We find that the pleadings did not
reveal any genuine issues of material fact. Therefore, the trial
court did not err in resolving the questions of law presented in
this matter and granting judgment to the Sonnenschein defendants.
 Affirmed. 
 THEIS and QUINN, JJ., concur.